# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

JEMME J. JENKINS, *Individually*, )
and JULIANNE GLISSON, )
*Administrator of the Estate of* )
*Jimmie L. Alexander, Sr.*, )
                                  )
    Plaintiffs, )
                                  )
v. )    CV418-099
                                  )
CORIZON HEALTH, INC., *et al.*, )
                                  )
    Defendants. )

# **ORDER**

The Court will not recapitulate the facts of the case, already set out at length in its Order denying plaintiffs' motion to compel production of the "infirmary discharge book" which plaintiffs believed someone, anyone, must possess. *See* doc. 60 at 1-3. Briefly, Jimmie Alexander died after a delay in treatment of a blood clot while a detainee at Chatham County Detention Center (CCDC), and plaintiffs believe that CCDC medical staff's failure to admit him to the infirmary contributed to that delay. The RN on duty the night Alexander fell ill testified that Corizon Health providers regularly kept a "discharge book" reflecting "the time [patients] came in, and the time they left" while she worked at the CCDC.

*See* Depo. Montine Stokes, RN at 40-42. This led plaintiffs to search for the book, and left them in a "circle of denial" (doc. 61 at ¶ 4) when defendants the Sheriff's Office (which contracts out medical services at CCDC and thus has no access to medical records) and Corizon Health (which has since stopped providing medical services to CCDC) represented that Correct Health (a non-party which took over the contract to provide medical services to CCDC) must have the document, if it existed or indeed ever did. *See* doc. 43 at Exhs. 9, 12, 15 & 17 (responses by the Sheriff and County); Exhs. 18, 20 & 23 (responses by Corizon Health). Correct Health, meanwhile, represented that it diligently searched for, but could not find, the document, and could not even confirm its existence. *Id*. at Exhs. 16 & 26 (affidavit of "no records" by non-party Correct Health).

Plaintiffs then moved to compel production from all three, because *someone* must have the document and they did not accept respondents' representations that they had neither possession, custody, nor control over it. Doc. 43. The motion was denied because a "motion to compel, of course, is not the appropriate vehicle to seek redundant discovery responses or an affidavit to support responses already submitted under

the assurance of Fed. R. Civ. P. 11." Doc. 60 at 4.

The Court thus ordered plaintiffs to file their motion for spoliation sanctions, if any, within 14 days. Doc. 60 at 4. They filed, instead, a consent motion for findings of fact, which is **GRANTED**. Doc. 63. The following stipulated facts are accepted as undisputed by the parties:

1. According to Montine Stokes, RN, entries were regularly made regarding admissions and discharges from the infirmary at the CCDC in a log book referred to as the "discharge book."

2. Plaintiffs have requested this discharge book for the dates of May 22-23, 2016 from all entities that could have had possession of the book as of July 31, 2016, the last day on which Corizon Health supplied services to the CCDC pursuant to its contract with Chatham County.

3. Correct Health, Corizon Health, and the Chatham County Sheriff's Office have not been able to locate or produce the requested discharge book as of the date of these stipulations.

This factual stipulation, of course, underscores the somewhat specious nature of plaintiffs' motion to compel. They have now agreed to facts demonstrating that respondents lack possession, custody, or control over the document, *exactly as all three respondents repeatedly represented to plaintiffs prior to the filing of the motion.*

The Court further ordered plaintiffs to meaningfully respond to non-party Correct Health's demand for fees pursuant to Rule 37. Doc. 60 at 5; *see* Fed. R. Civ. P. 37(a)(5)(B) ("If the motion is denied, the court . . .

must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees."). Fees are not to be awarded "if the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Absent one of these exceptions, an award of fees under Rule 37 is mandatory and requires no showing of bad faith. *See Bank Atlantic v. Blythe Eastman Paine Webber. Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994); *Devaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993). Plaintiffs do not contend that an award would be unjust, instead arguing that they:

> were substantially justified in including Correct Health in the motion to compel since Plaintiffs had no reason to accept Correct Health's statements over the statements of Corizon or the Sheriff's Office. If Plaintiffs had not included Correct Health in the motion, then the Defendants could have argued that Correct Health had the document. The Court would not have been able to fashion any remedy without Correct Health as a party to the motion. Without being able to determine the truthfulness of the denials, Plaintiffs cannot file for sanctions, either for non-production or spoilation because Plaintiffs cannot determine the appropriate party against which to file such a motion. The circle of denial prevents other action by Plaintiffs, except perhaps a request for a finding of facts that recognizes the prior discovery requests, the denials and Plaintiffs diligent follow-up attempts to discover.

Doc. 61 at ¶ 4. Correct Health, it must be remembered, produced a sworn

4

affidavit in response to plaintiffs' subpoena attesting that after a diligent search, no records were discovered. *See* doc. 43 at Exhs. 16 & 26. It is unclear what prompted plaintiffs to doubt the truthfulness of Correct Health's representation that it did not possess the document,[1] if it ever

---

[1] Allegations that respondents have misrepresented their possession, custody, or control over the discharge book are taken very seriously by this Court. The Court finds it difficult to discern, however, precisely how plaintiffs came to believe that respondents were being evasive or untruthful in disclaiming any possession, custody, or control over the document.

The Sheriff's Office and Corizon Health, true, pointed the finger at one another to the extent they assumed the document exists/existed. But to suggest that they left no doubt the document was in non-party Correct Health's possession (doc. 61 at 3) is disingenuous. The Sheriff's Office and Corizon Health's responses were ambiguous, at best, in declaring Correct Health had the document. *See* doc. 43, Exh. 9 at 3, Resp. No. 5 ("None in possession of [CCDC]. These records are in possession of Corizon."); Exh. 15 ("None in possession of County."); Exh. 17 ("there is no allegation that the County ever had possession of any log book"); Exh. 18 at 3 ("When Corizon Health left in July 2016, the County retained the clinical records"); Exh. 20 at 2 (explaining that "the records left at the CCDC when Corizon Health exited the facility in July 2016 *may* include an infirmary log" but such a record "would need to come from the Sheriff's Office (or their contracted medical provider) — not Corizon Health."); Exh. 23 at 1-2 Resp. No. 1 ("Corizon Health has no documents responsive to [this request] in its possession, custody, or control" because all its patient records "in existence" at the time its contract ended "were left at [CCDC].").

Correct Health, meanwhile, was unambiguous in disclaiming possession, custody, or control. Doc. 43 at Exh. 16 (Correct Health's email to plaintiffs representing that their Director of Clinical Services "was personally present on the day we took over the contract at the CCDC. She personally coordinated the transition with [Corizon Health]. Ms. Llovet states that no logs/books were left by Corizon."); Exh. 26 at 4-5 (sworn "affidavit of no records" by Correct Health's Health Service Administrator Karen Forchette, RN, who found no responsive records after "a thorough search"); Exh. 28 (explaining that no documents had been found and their best guess was that "Corizon may have taken this with them when their contract ended"). Plaintiffs' incredulity does not demonstrate either that the infirmary discharge logs ever existed, much less that respondents were lying, repeatedly, by saying they did not have them and suggesting that someone else might.

5

existed (and, despite plaintiffs' certainty, there is no hard proof that it did). It is unfathomable why plaintiffs, after researching the issue, believed a motion to compel documents from respondents who unambiguously swore that they lacked possession, custody, or control over the item would be more appropriate than seeking spoliation sanctions for lost/destroyed evidence and seeking the exact proposed factual stipulation (to which the parties have now agreed) therein.

"Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997). The Court concedes

---

The Court's consternation at the implication behind plaintiffs' motion bears repeating: plaintiffs believed *someone* was lying and only filed the motion because they believed either (1) one of the respondents would miraculously acknowledge possession of the requested document if it were faced with perjury to the Court (after all, the responses themselves already subjected respondents or their counsel to sanctions, if they were proven false) or (2) only a formal representation to the Court should be credited as true. The Federal Rules do not provide a mechanism, beyond those that plaintiffs used, to guarantee the accuracy of discovery responses. Plaintiffs' proposed order, submitted with their motion, emphasizes this point. They asked the Court to order respondents to produce the infirmary discharge book and, if they could not, to recapitulate the efforts they had made to recover the document and their history of possession and disposition of the document, "to the best of [their] knowledge." Doc. 43-30 at 1; *see also* doc. 61 at 3 (alleging that "[o]ne of the entities either has this book or has destroyed it" and plaintiffs "cannot determine which entity is being untruthful" without court intervention). They sought, in other words, for respondents to not only promise (as they had already, repeatedly done), but to *really, really promise* this time, that they did not have the infirmary logs.

that plaintiffs earnestly believe in the appropriateness of their motion, but it is not convinced that that belief is reasonable. Plaintiffs have had their opportunity to be heard and have failed to demonstrate that their motion was substantially justified. Accordingly, Correct Health's motion for fees under Rule 37 is **GRANTED**.

In considering a request for legal fees, the Court must determine whether the hourly rate charged by counsel is reasonable and whether counsel exercised proper billing judgment by only billing for hours reasonably expended. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Correct Health has not yet submitted its demand to the Court for an award of legal fees. *See* doc. 56 at 4-5.

Therefore, plaintiffs are **ORDERED** to confer with Correct Health within 14 days of service of this Order as to its demand for legal fees to compensate the costs of preparing its response to the motion. Plaintiffs shall file a notice of stipulation to fees with the Court, or, if no agreement can be reached, Correct Health shall file evidence of its fees with the Court, within 21 days of service of this Order. In the event that further briefing on the reasonableness of the fees claimed is necessary, the normal motion briefing schedule set forth in the Local Rules shall apply.

7

*See* S.D. Ga. L. R. 7.5 & 7.6.

**SO ORDERED,** this  3rd  day of April, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA