IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JEMME J. JENKINS, Individually, ) <br> and JULIANNE GLISSON, ) <br> Administrator of the Estate of ) <br> Jimmie L. Alexander, Sr., ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CORIZON HEALTH INC., a Delaware ) <br> Corporation; GUY AUGUSTIN, ) <br> M.D.; VICTORIA NEILSER, LPN; ) <br> and MARK DAMBACH, LPN; ) <br> ) <br>     Defendants. ) <br> ) | CASE NO. CV418-099 |

## O R D E R

Before the Court are several pretrial motions filed by Plaintiffs Jemme J. Jenkins and Julianne Glisson, Administrator of the estate of Jimmie L. Alexander, Sr., and Defendants Corizon Health, Inc., Guy Augustin, Victoria Neisler, and Mark Dambach ("Corizon Defendants"). (Docs. 285, 289, 290, 293, 297, 304, 308.) Having carefully considered each of these motions, the Court will now announce its rulings.

### LEGAL STANDARD

Trial courts "are authorized to rule on motions in limine pursuant to their inherent authority to manage trials[,] and they exercise "broad discretion ruling on such motions." Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. 1:12-cv-3096-MHC, 2015 WL

11199154, at *1 (N.D. Ga. Feb. 3, 2015). A trial court, however, "should only exclude evidence in limine where the evidence is clearly inadmissible for any purpose." Soto v. Geico Indem. Co., No. 6:13-cv-181-Orl-40KRS, 2014 WL 3644247, at *1 (M.D. Fla. July 21, 2014) (citation omitted). Any rulings on motions in limine are provisional and "remain[] subject to reconsideration by the [C]ourt throughout the trial[.]" Id. (quotation omitted).

**ANALYSIS**

I.   <u>PLAINTIFFS' MOTION TO SUPPLEMENT REQUESTS TO CHARGE</u>

Plaintiffs request leave to supplement their requests to charge out of time. (Doc. 308.) Plaintiffs seek to add a requested charge explaining the duty that can arise to a third party from services rendered for consideration. (Id. at 3.) Federal Rule of Civil Procedure 51(a)(1) requires parties to file their requests to charge "[a]t the close of the evidence or at any earlier reasonable time that the court orders[.]" Fed. R. Civ. P. 51(a). At the pretrial conference in this case, the Court ordered the parties to file their requests to charge by the close of business on January 5, 2022. (Doc. 265 at 1.) Plaintiffs did not file this requested charge until January 10, 2022. (Doc. 308.) Subsequently however, following the settlement of two other defendants, the Court provided the parties an additional opportunity to amend their requested charges. Plaintiffs included the new requested charge in their amended requests to charge. (Doc. 323 at 11.) Because

2

Plaintiffs' requested charge is already properly before the Court, Plaintiffs' motion (Doc. 308) is **DISMISSED AS MOOT.**

II.   <u>PLAINTIFFS' MOTIONS IN LIMINE</u>

Plaintiffs have filed various motions in limine. (Docs. 285, 289, 290, 293, 297.) Defendants oppose or partially oppose each of these motions. (Docs. 314, 313, 317, 320, 310.) The Court will address each of these motions in turn.

a. <u>Conclusions in the CCSO's Internal Affairs Report and the GBI's Report</u>

Plaintiffs first seek to exclude portions of the Chatham County Sheriff's Office's (CCSO) internal affairs report and the Georgia Bureau of Investigation's report. (Doc. 285.) Plaintiffs argue that the CCSO's and GBI's reports contain legal and factual conclusions that are untrustworthy and inadmissible under Federal Rules of Evidence 403, 702, and 803. (<u>Id.</u> at 3-4.) Defendants concede that the investigative reports do contain inadmissible information in the form of witness statements and duplicative documentation. (Doc. 314 at 2-3.) However, Defendants argue that the conclusions are admissible under the public records exception to the hearsay rule. (<u>Id.</u> at 3-4 (citing Fed. R. Evid. 803(8).)

Federal Rule of Evidence 803(8) provides an exception to the general hearsay rule for records or statements of a public office from a legally authorized investigation unless the opponent shows "the source of information or other circumstances indicate a lack

of trustworthiness." Fed. R. Evid. 803(8). However, Rule 803(8) "does not provide for the admissibility of the legal conclusions contained within an otherwise admissible public report." Hines v. Brandon Steel Decks, Inc., 886 F.2d 299, 302 (11th Cir. 1989). Additionally, "[a]ny statement contained in [a] report that was made by a non-party witness or bystander is inadmissible as hearsay within hearsay." Gregory v. Wal-Mart Stores E., LP, No. CV212-042, 2013 WL 12180710, at *6 (S.D. Ga. July 23, 2013).

Plaintiffs do not contend that the reports were not conducted pursuant to a legally authorized investigation, and therefore, bear the burden of showing the reports are untrustworthy. Crawford v. ITW Food Equip. Grp. LLC, 977 F.3d 1331, 1347 (11th Cir. 2020). In determining the trustworthiness of a public record, courts will generally consider four factors: "the timeliness of the investigation, the skill and experience of the investigator, whether the investigator held any sort of hearing, and the investigator's impartiality." Gregory, 2013 WL 12180710, at *6 (citation omitted). Plaintiffs appear to argue that the CCSO report is untrustworthy because Ronald Tyran, the CCSO officer who conducted the investigation, is not an expert on medical issues or the statutory requirements for providing medical care. (Doc. 285 at 4.) However, the question is not whether Mr. Tyran is an expert in medicine but whether Mr. Tyran was qualified to investigate potential violations of jail policies, the subject of the CCSO

4

report. Plaintiffs argue that Mr. Tryan was unaware of the "law and the applicable statutes" but provide no evidence for this assertion other than their disagreement with Mr. Tyran's conclusion. (Id. at 3); Crawford, 977 F.3d at 1349 ("[T]he party opposing admission . . . has adduced no evidence at all—apart from bald speculation—that any of the OSHA reports lack trustworthiness.") Plaintiffs have also not shown the CCSO investigation was untimely or that Mr. Tyran lacked impartiality. Likewise, Plaintiffs have put forth no evidence showing that the GBI report is untrustworthy other than their disagreement with its conclusion. (Doc. 285 at 4.)

As Defendants note, the reports do contain some inadmissible content. Reviewing the "Findings" section of the CCSO report (Doc. 285, Attach. 1 at 12-14), it appears that most of Mr. Tyran's conclusions are admissible factual findings. Fed. R. Evid. 803(8)(A)(iii). However, the many witness statements included in the report are likely inadmissible hearsay as barring a showing that they fall under another exception or exclusion to the hearsay rule. JVC Am., Inc. v. Guardsmark, L.L.C., No. 1:05-cv-0681-JOF, 2006 WL 2443735, at *13 (N.D. Ga. Aug. 22, 2006) (finding that "only the opinions and conclusions of Detective Kanazawa formed during his investigation admissible" and "that a statement of a third party is not admissible merely because it is contained in a police report"). For example, Mr. Tyran's summary of Dr. Augustin's

causation opinion is merely a recitation of Dr. Augustin's witness statement and is inadmissible as hearsay within hearsay. (Doc. 285, Attach. 1 at 13.)

Finally, Plaintiffs argue that some of the conclusions in the reports are purely legal conclusions and should be excluded as confusing to the jury. (Doc. 285 at 3-4.) Specifically, Plaintiffs contest the admissibility of the CCSO report's conclusion that no county policies or procedures were violated and the GBI report's conclusion that "no criminal acts" were found in their investigation. (Id.) Although the conclusions in the reports touch upon legal issues, the Eleventh Circuit has stated that the "amorphous line between 'factual' and 'legal' conclusions may obscure a practical analysis[.]" Hines, 886 F.2d at 303. In this case, the Court finds that the conclusions contained the CCSO and GBI reports—which do not address Defendants' ultimate civil liability in this case—are "factual findings" under Rule 803(8)(A)(iii). Valdes v. Miami-Dade Cnty., No. 12-22426-CIV-MORENO/O'SULLIVAN, 2015 WL 7253045, *5-6 (S.D. Fla. Nov. 17, 2015) (finding that conclusion from an internal affairs investigation that plaintiff's excessive force allegations were "not sustained" was a "factual finding" encompassed by Rule 803(8)(A)(iii) (citing Beach Aircraft Corp. V. Rainey, 488 U.S. 153, 162, 109 S. Ct. 439, 446, 102 L.Ed.2d 455 (1988)). Because the Court finds the reports are trustworthy, Plaintiffs' motion (Doc. 285) is **DENIED** to the

extent they seek to exclude the conclusions contained in the reports.[1] The Court notes, however, that the portions of the CCSO report that contain hearsay within hearsay will not be admissible.

### b. Motion to Exclude Prejudicial Impeachment Evidence

Next, Plaintiffs ask the Court to prohibit Defendants from using evidence based on criminal history or family circumstances to impeach witnesses. (Doc. 289 at 1.) Plaintiffs argue that Defendants have not provided the required notice of their intention to use evidence of criminal history. (Id.) Plaintiffs also argue that Defendants should not be permitted to impeach Plaintiffs' witnesses due to being born out of wedlock. (Id. at 2-3.)

Defendants have responded that they have no intention of using the fact that a witness was born out of wedlock as a method of impeachment. (Doc. 313 at 1.) Defendants also state that they have no intention of violating Federal Rule of Evidence 609(b)(2)'s notice requirement to use criminal convictions older than ten years. (Id. at 2.) However, Defendants ask the Court to defer ruling on Plaintiffs' motion because it is unclear exactly what evidence Plaintiffs wish to exclude and, therefore, how the Rules

---

[1] Plaintiffs can still challenge the reports' conclusions but will need to do so through presentation of contrary evidence at trial. "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004) (citation omitted).

of Evidence would apply. (Id. at 3.) The Court agrees that exclusion of such broad categories of potentially admissible impeachment evidence is inappropriate prior to trial. As a result, Plaintiffs' motion (Doc. 289) is **DENIED WITHOUT PREJUDICE,** and Plaintiffs may renew these objections at trial should the issue arise.

### c. Deposition of Dr. Aseem Bhandari

Plaintiffs move to exclude from trial portions of the deposition of Dr. Aseem Bhandari, the interventional radiologist who saw Mr. Alexander at Memorial Hospital. (Doc. 290 at 1.) Plaintiffs object to Defense Counsel's use of the phrase "had evidence of cocaine use" when asking Dr. Bhandari about the cause of Mr. Alexander's death. (Id. at 2.) Plaintiffs claim the inclusion of the phrase is highly prejudicial and has no bearing on Dr. Bhandari's medical treatment of Mr. Alexander. (Id.) Plaintiffs also object to a portion of the deposition in which Dr. Bhandari is asked about a debate among other people-doctors presumably-as to the exact cause of Mr. Alexander's death. (Id. at 2-3.) Plaintiffs argue that this information is speculative and based on hearsay. (Id. at 3.) In response, Defendants argue that the question about cocaine use is relevant because Dr. Bhandari did not rule cocaine use out as a potential risk factor. (Doc. 317 at 4.) Defendants do not address Plaintiffs' second objection.

Turning to the first objection, as Plaintiffs note, Dr. Bhandari was not qualified under Daubert to give any expert opinion on the issue of causation. (Doc. 290 at 2.) Even if he were, Dr. Bhandari was asked about a variety of hypothetical characteristics in addition to cocaine use—age, smoking, hypertension, high cholesterol, and history of transient ischemic attack. (Doc. 317 at 2-3.) Dr. Bhandari merely stated that he believed "some of those" characteristics are risk factors for developing atherosclerotic disease but did not highlight cocaine specifically. (Id. at 3.) As a result, the Court finds that Defense Counsel's reference to cocaine use in this context is highly prejudicial and has little, if any, probative value. Fed. R. Evid. 403. The Court also agrees with Plaintiffs' second objection. Dr. Bhandari's response regarding the debate about Mr. Alexander's exact cause of death is based entirely on inadmissible hearsay. Fed. R. Evid. 801. Accordingly, Plaintiffs' motion (Doc. 290) is **GRANTED**, and those portions of Dr. Bhandari's deposition shall be excluded from trial.

### d. Dr. Blais's De Bene Esse Video Trial Deposition

Plaintiffs ask the Court to rule on several objections Defendants made during the de bene esse video trial deposition of Dr. Robert Blais so that Plaintiffs can edit the video for use at trial in accordance with the Court's rulings. (Doc. 293 at 1.) Defendants have withdrawn some of their objections but maintain

others. (Doc. 320 at 1-4.) The Court will now rule on the remaining objections to the deposition testimony.[2] (Doc. 293, Attach. 1.)

i. **Page 27, Lines 9-12:**

Defendants maintain their objection to Dr. Blais's testimony regarding the general competency of licensed practical nurses ("LPN"). (Doc. 320 at 2.) The Court has already ruled that Dr. Blais is not qualified to opine on the standard of care for LPNs. (Doc. 224 at 15.) Accordingly, Defendant's objection is **SUSTAINED.** The testimony on Page 26, Lines 21 through 25 and Page 27, Lines 1 through 8, must be struck from the deposition.

ii. **Page 32, Line 25:**

Defendants maintain their objection that Dr. Blais assumed facts not in evidence when testifying about Dr. Augustin misdiagnosing Mr. Alexander with arthritis. (Doc. 320 at 2.) The Court cannot determine whether Dr. Blais is assuming "facts not in evidence" until the evidence has been presented at trial. Accordingly, the Court **DEFERS** ruling on this objection.

iii. **Page 39, Lines 23-24:**

Defendants object to Plaintiffs' questioning that implies Dr. Augustin did not examine Mr. Alexander until "3:00 or 3:15" as not

---

[2] Plaintiffs also object to Wanda Williams and Desmond Bryant's cross examination of Dr. Blais. (Doc. 293 at 9-12.) As those parties have been dismissed from this case, Plaintiffs' objections to this testimony are **SUSTAINED.**

supported by the evidence in the record. (Doc. 320 at 2-3.) The Court **DEFERS** ruling on this objection.

### iv. **Page 40, Lines 18-19:**

Defendants object to Dr. Blais's testimony regarding Dr. Augustin's diagnosis of deep vein thrombosis as assuming facts not in the record. (Doc. 320 at 3.) The Court **DEFERS** ruling on this objection.

### V. **Page 59, Lines 8-23:**

Defendants object to Dr. Blais's response to one of their questions as non-responsive. (Doc. 320 at 3-4.) In essence, Defendants asked Dr. Blais whether a standard of care assessment should be made based on the information a person had at the time of treatment or on all the information that may be known after the fact. (Doc. 293, Attach. 1 at 16.) Dr. Blais responded that "this particular type of issue with what Mr. Alexander experienced, I don't think it's changed in the last 30 year[s]." It appears to the Court that Dr. Blais was attempting to emphasize the straightforward nature of Mr. Alexander's medical situation in response to Defendants' question. The Court does not find that this answer was so non-responsive as to deserve being struck. Defendants' objection is **OVERRULED.**

VI. **Page 92, Lines 16-25:**

Defendants object to Dr. Blais's response to their question on cross-examination about whether Dr. Augustin appropriately ordered medication in response to "acute findings." (Doc. 320 at 4.) In response to the question, Dr. Augustin stated, "Maybe not, because a higher blood pressure is trying to drive more blood distally, so I'm not sure that high blood pressure would have hurt Mr. Alexander's leg." (Doc. 293, Attach. 1 at 24.) The Court disagrees that this answer is non-responsive as Dr. Blais is clearly stating that he thinks Dr. Augustin's decision to order medication may not have been appropriate. Further, Defendants cannot complain that the answer is outside of the scope of Dr. Blais's qualifications when they elicited the answer on cross-examination. See Nelson v. Freightliner, LLC, 154 F. App'x 98, 112 (11th Cir. 2005). Defendants' objection is **OVERRULED.**

e. Plaintiffs' Omnibus Motion in Limine

Plaintiffs seek to exclude four categories of evidence as irrelevant under Federal Rules of Evidence 401, 402 and 403: (1) discussion of prior court orders or prior defendants; (2) statements of apology; (3) the effect of the lawsuit on insurance rates; and (4) any suggestion that damages will not undo the harm done. (Doc. 297 at 1-3.) Defendants partially oppose this motion. (Doc. 310.) Plaintiffs' motion (Doc. 297) is **GRANTED IN PART** and **DENIED IN PART** as follows:

i. **Prior Court Orders and Prior Defendants:**

Plaintiffs seek to exclude any reference to the Court's prior orders or evidence that other Defendants were previously parties to this action. (Doc. 297 at 2.) The Court agrees with Defendants that there may be instances in which this type of evidence is admissible to rebut a claim made by Plaintiffs. (Doc. 310 at 2); see, e.g., Fed. R. Evid. 408(b); Grand Slam Club/Ovis v. Int'l Sheep Hunters Ass'n Found., Inc., No. 2:06-cv-4643-VEH, 2008 WL 11375374, at *2 (N.D. Ala. Jan. 13, 2008). Accordingly, Plaintiffs' motion is **DENIED WITHOUT PREJUDICE** on this issue. However, the Court warns the parties that they must approach the bench and obtain express court permission before making any reference to the Court's prior orders or a prior defendant's involvement in this litigation.

ii. **Statements of Apology:**

Plaintiffs ask the Court to exclude "[a]ny reference or suggestion that Defendant[s] are sorry or regret[] the occurrence in question" as an improper appeal to emotion. (Doc. 297 at 2.) Defendants oppose the motion and, alternatively, ask that the Court apply the inverse rule to Plaintiffs, preventing them from arguing that Defendants have not apologised or shown remorse for their actions. (Doc. 310 at 3-4.) The Court finds that statements of remorse are wholly irrelevant to the issues in this case, and Plaintiffs' motion is **GRANTED** on this issue. Plaintiffs will also

13

be restricted from arguing that Defendants have not apologized or shown remorse. Plaintiffs' motion is also **GRANTED** to the extent they seek to exclude Golden Rule arguments. (Doc. 297 at 3.)

    iii. **Insurance Rates:**

Plaintiffs move to exclude references to the trial outcome possibly effecting insurance rates. (Id.) Defendants do not oppose this request. (Doc. 310 at 4.) Plaintiffs' motion is **GRANTED** to the extent they seek to exclude any reference to the possibility that insurance rates will be changed as a result of the jury's verdict in this case.

    iv. **Suggestion of Irrelevance of Damages:**

Plaintiffs move to exclude any suggestion by Defendants to the effect that "money won't undo the injury and damage the plaintiffs may have sustained[.]" (Doc. 297 at 3.) Defendants argue that this motion is premature because such evidence may be relevant if Plaintiffs open the door to the issue. (Doc. 310 at 4.) Plaintiffs' motion is **DENIED WITHOUT PREJUDICE** on this issue, but Defendants shall not make any suggestion of this type without first obtaining express permission from the Court away from the jury.

III. <u>DEFENDANTS' MOTION IN LIMINE</u>

Defendants have also filed an omnibus motion in limine seeking the exclusion of several categories of evidence and arguments at trial. (Doc. 304.) Plaintiffs have partially opposed Defendants'

motion. (Doc. 321.) For the following reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

a. <u>Exhibits Identified as Irrelevant</u>

Defendants move to exclude eight exhibits that Plaintiffs intend to introduce at trial as irrelevant. (Doc. 304 at 3-4.) The Court's rulings on the admissibility of these exhibits are as follows:

i. **P10 – An organizational chart for Corizon Health:**

Defendants' motion is **DENIED** to the extent they seek to prohibit Plaintiffs from using the Corizon Health organizational chart. As long as the chart is authenticated, the Court finds this simple chart could be helpful to jurors and would have no prejudicial effect.

ii. **P11, P14, and P57 – Corizon Health job descriptions:**

Defendants object to Plaintiffs using the job descriptions of three Corizon employees who are not defendants in this case. (Doc. 304 at 5.) It is not clear whether these job descriptions could become relevant at trial. Accordingly, the Court **DENIES WITHOUT PREJUDICE** Defendants' motion to exclude these job descriptions.

iii. **P17 – Corizon Health's 2013 response to a Request for Proposal from Chatham County:**

Defendants move to exclude Plaintiffs' use of Corizon Health's 2013 proposal to provide inmate healthcare services for the Chatham County Detention Center. (Doc. 304 at 5-6.) Although

it appears to the Court that this document likely contains duplicative information, it is still potentially relevant. Defendants' motion to exclude this document is **DENIED WITHOUT PREJUDICE.**

### iii. P18 — Partnership Memo:

Plaintiffs have agreed to withdraw this exhibit for all purposes except impeachment. (Doc. 321 at 2.) Defendants' motion to exclude this document is **GRANTED.**

### iv. P58 — Dr. Augustin's personnel file:

Defendants argue that Dr. Augustin's personnel file should be excluded because it is irrelevant to his treatment of Mr. Alexander. (Doc. 304 at 8.) Because Plaintiffs do not offer any reason why the personnel file is relevant their claims, Defendants' motion to exclude it is **GRANTED.**

### v. P63 — Printout of Corizon Health's Webpage:

Defendants seek to exclude a printout of a promotional page from Corizon Health's website as lacking authenticity and relevancy. (Doc. 304 at 9.) Plaintiffs ask the Court to defer ruling on this exhibit as the page may be relevant to Corizon Health's duty to train nurses and speciality in providing medical treatment in correctional facilities. (Doc. 321 at 3.) Although relevancy of the webpage is unclear, the Court will allow Plaintiffs to make their argument at trial. Defendants' motion to exclude the webpage is **DENIED WITHOUT PREJUDICE.**

      b. <u>Evidence Regarding Corizon Health's Performance Under the
Services Contract</u>

Defendants seek to prevent Plaintiffs from introducing evidence of Corizon Health's performance under their services contract with Chatham County. (Doc. 304 at 9-13.) Defendants' motion to exclude this category of evidence is overbroad, and therefore, **DENIED WITHOUT PREJUDICE.**

      c. <u>Evidence Regarding the Ambulance Contract</u>

Defendants move to exclude evidence that Corizon Health had a contract with an ambulance company. (Doc. 304 at 13.) Defendants contend that the document is irrelevant because the Court already ruled that Dr. Augustin's decision to send Mr. Alexander by car to the hospital instead of by emergency medical service did not constitute deliberate indifference. (<u>Id.</u>) Yet, the Court did not rule whether Dr. Augustin's decision constituted negligence, a finding requiring a lower standard of proof, because Dr. Augustin did not move for summary judgment on those claims. Because the ambulance contract could be relevant to Plaintiffs' claims against Dr. Augustin, Defendants' motion to exclude it is **DENIED WITHOUT PREJUDICE.**

      d. <u>Evidence of Corizon Health's Corporate Finances</u>

Defendants move to exclude evidence of Corizon Health's corporate finances. (Doc. 304 at 13-14.) Plaintiffs state that they do not anticipate submitting evidence of Corizon Health's

corporate finances generally. (Doc. 321 at 6.) Plaintiffs, however, contend that Corizon Health's income from work at the Chatham County Detention Center (CCDC) may be relevant to show Corizon Health received consideration for their services. (Id.) Plaintiffs also state that evidence of Corizon Health's financial resources may be relevant to rebut a defense argument that Corizon Health lacked the resources to provide certain services. (Id.) It does not appear the parties dispute whether Corizon Health received consideration under the services contract, and any evidence regarding the amount of income received is both irrelevant and prejudicial. Fed. R. Evid. 403. Accordingly, Defendants' motion to exclude evidence of Corizon Health's corporate finances from Plaintiffs' case-in-chief is **GRANTED**. Plaintiffs may still use the evidence for impeachment purposes if appropriate.

    e. <u>Relative Wealth of the Parties</u>

    Based on the Plaintiffs' consent (Doc. 296 at 2), Defendants' motion to exclude evidence of the parties' relative wealth is **GRANTED**.

    f. <u>Corizon Health's Budget</u>

    Defendants move to exclude evidence of Corizon Health's budget for providing health care at the CCDC. (Doc. 304 at 15-16.) Plaintiffs contend they will only offer this evidence for impeachment purposes and ask the Court to defer ruling on this issue. (Doc. 321 at 7.) The Court will take Plaintiffs at their

word, and Defendants' motion to exclude this evidence from Plaintiffs' case-in-chief is **GRANTED**.

g. <u>Previous Reports of Death and Injury</u>

Defendants move to exclude evidence of previous injuries or deaths at the CCDC. (Doc. 304 at 15.) Plaintiffs' state they do not anticipate the introduction of such evidence unless for impeachment purposes. Therefore, Defendants' motion to exclude this evidence from Plaintiffs' case-in-chief is **GRANTED**

h. <u>Previous Complaints Regarding Medical Services Provided at CCDC</u>

Based on Plaintiffs' consent (Doc. 296 at 2), Defendants' motion to exclude evidence regarding previous complaints about medical services at the CCDC is **GRANTED**.

i. <u>Media Coverage of Corizon Health</u>

Based on Plaintiffs' consent (Doc. 321 at 7), Defendants' motion to exclude evidence of media coverage about Corizon Health is **GRANTED**.

j. <u>Evidence about the Impact of Mr. Alexander's Death on Witnesses</u>

Defendants seek to exclude testimony from witnesses regarding the impact of Mr. Alexander's death on them. (Doc. 304 at 18-19.) Plaintiffs agree that they can not ask damages witnesses about the effect Mr. Alexander's death may have had on them. (Doc. 321 at 8.) Nevertheless, Plaintiffs oppose a broad ruling on the issue

because their witnesses' testimony may be viewed both as describing the witness's loss as well as the value Mr. Alexander's life. (Id.) Because the exact nature of this testimony is impossible to predict before trial, Defendants' motion is **DENIED WITHOUT PREJUDICE,** but Plaintiffs are warned that any attempts to make inappropriate emotional appeals through their witnesses will not be tolerated.

k. Lay Witness Opinions

Defendants seek to exclude any testimony from any lay witness regarding the cause of Mr. Alexander's death. (Doc. 304 at 19-20.) Plaintiffs agree that lay witnesses cannot opine on causation but ask the Court to defer ruling on the issue. (Doc. 321 at 8-9.) Plaintiffs have provided no reason for the Court to defer ruling on this issue. Defendants' motion to exclude lay witness testimony on causation is **GRANTED.**

l. Dr. Hudson's Opinions

Defendants seek to exclude the opinion testimony of Dr. Linda Hudson. (Doc. 304 at 20.) Defendants argue that the Court has already ruled that Dr. Hudson is not qualified to testify about any of the matters for which she was identified as an expert witness. (Id. at 20.) However, as Plaintiffs note, the Court ruled that Dr. Hudson was qualified to opine on Dr. Augustin's standard of care. (Doc. 223 at 13.) It also appears that Defendants had notice that Dr. Hudson would give an opinion on this issue. (Doc.

80 at 7.) Accordingly, Defendants' motion to entirely exclude Dr. Hudson's opinion testimony is **DENIED WITHOUT PREJUDICE.**

    m. <u>Bifurcation and Single Recovery</u>

Based on Plaintiffs' consent (Doc. 321 at 9), the Court **GRANTS** Defendants' motion to bifurcate trial for the purpose of determining the amount of punitive damages only.

    n. <u>Hypothetical Questions for Lay Witnesses</u>

Defendants seek to prohibit Plaintiffs from asking lay witnesses hypothetical questions. (Doc. 304 at 23.) It is not clear why Plaintiffs want a deferred ruling on this issue since they agree that lay witnesses may not give opinions based on assumed facts. (Doc. 321 at 9 (citing <u>United States v. Henderson</u>, 409 F.3d 1293, 1300 (11th Cir. 2005)). Defendants' motion to exclude these questions is **GRANTED.**

    o. <u>Conclusory Testimony that Dr. Augustin was Deliberately Indifferent</u>

Based on Plaintiffs' consent (Doc. 31 at 10), Defendants' motion to exclude conclusory testimony that Dr. Augustin was deliberately indifferent is **GRANTED.**

    p. <u>Medical Literature</u>

Defendants essentially request the Court to follow the requirements of Federal Rule of Evidence 803(18) governing the use of medical literature at trial. (Doc. 304 at 24.) This request, although unnecessary, is **GRANTED.**

q. Reptile Lawyer Arguments

Defendants ask the Court to prevent Plaintiffs from making so called "reptile lawyer arguments" that are meant to elicit fear in the jurors by reframing issues of legal liability as issues of community safety. (Doc. 304 at 25-27.) The Court has considered Defendants' arguments and finds that a blanket ruling on this issue would be inappropriate at this time. Defendants' motion is **DENIED WITHOUT PREJUDICE** on this issue.

r. Arguments About Sending a Message or the Conscience of the Community

Defendants also seek to exclude arguments that jurors are supposed to act as the "conscience of the community" or "send a message" through their verdict. (Doc. 304 at 27-28.) Plaintiffs contend that they will not ask the jury to "send a message," but argue that referring to the jury as the "conscience of the community" has been allowed in many courts and merely reminds the jury of its legal responsibility. (Doc. 321 at 12-13.) The Court **DENIES WITHOUT PREJUDICE** Defendants' motion but warns Plaintiffs that attempts to inflame the jury will not be tolerated.

s. Evidence of Mr. Alexander's Good Behavior

Defendants seek to exclude evidence that Mr. Alexander was a "model detainee" at the CCDC as inadmissible character evidence. (Doc. 304 at 28.) Plaintiffs argue that the evidence will be relevant to rebut Defendants' arguments that Mr. Alexander made

unreliable medical complaints. (Doc. 321 at 13.) Federal Rule of
Evidence 404(a)(1) prohibits the use of character evidence "to
prove that on a particular occasion the person acted in accordance
with the character or trait." In the Court's opinion, Plaintiffs
do not intend to offer evidence of Mr. Alexander's behavior while
incarcerated to prove that Mr. Alexander was acting honestly when
he complained at the time of the incident. Instead, Plaintiffs
wish to use the evidence to rebut Defendants' claims that the
Corizon Health medical providers had a reason not to take Mr.
Alexander's complaints seriously. Accordingly, the Court finds
this evidence is not inadmissible under Rule 404(a)(1), and
Defendants' motion is **DENIED WITHOUT PREJUDICE** on this issue.
However, this evidence may not be relevant unless Defendants open
the door on this issue.

### t. Speculation by Dr. Mendel

Defendants seek to exclude expert witness Dr. Lawrence
Mendel's opinion that Mr. Alexander was "confused" when he told
Mr. Dambach that he had been put under a voodoo spell. (Doc. 304
at 28-29.) In his deposition, Mr. Mendel states that Mr.
Alexander's report of being "subject to voodoo" was "one possible
sign of confusion" which, "in the face of a dangerously elevated
blood pressure[,] was an indication" that Mr. Alexander needed to
be evaluated for an altered mental state. (Doc. 82 at 48-49.) The
Court does not find that Dr. Mendel's opinion is speculative. Dr.

Mendel was merely opining on the factors that would have alerted someone to the seriousness of Mr. Alexander's condition. Accordingly, Defendants' motion to exclude Dr. Mendel's opinion is **DENIED WITHOUT PREJUDICE.**

### u. Evidence that Documentation Issues are Malpractice

Defendants seek to exclude evidence that Corizon Health employees failed to properly document their treatment of Mr. Alexander because they have not disclosed expert testimony that shows any documentation issue caused Mr. Alexander's injury. (Doc. 304 at 29-30.) As Plaintiffs highlight, Dr. Mendel opined multiple times that the inadequate documentation of Mr. Alexander's condition contributed to the delay in his treatment. (Doc. 321 at 17.) Defendants' motion to exclude this evidence is **DENIED WITHOUT PREJUDICE.**

### v. Demonstrative Exhibits

Lastly, Defendants argue that Plaintiffs should not be permitted to introduce demonstrative exhibits into evidence. (Doc. 304 at 30.) Defendants do not oppose Plaintiffs showing the drawings to the jury at appropriate times during trial. Plaintiffs argue that one of the demonstrative exhibits, a chart showing the timeline of the events in question, should be permitted to go to the jury as an admissible summary chart. (Doc. 321 at 18 (citing United States v. Norton, 867 F.2d 1354, 1362 (11th Cir. 1989).) Considering the caution with which "summaries are to be utilized,

given the possibilities for abuse[,]" <u>Norton</u>, 867 F.2d at 1326,
the Court **GRANTS** Defendants' motion to exclude these exhibits from
evidence. Plaintiffs may still show the exhibits to the jury at
appropriate times during trial to illustrate their account of the
timeline in this case.

**CONCLUSION**

The Court's foregoing rulings shall govern the presentation
of evidence at trial.

SO ORDERED this 8th day of February 2022.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA